**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>**JACK DAVIS CARTER,**<br><br>　　　　　　Defendant. | 1:04-CR-05306 OWW<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT (Fed. R. Crim. P. 12(b)(3)) |

## I. INTRODUCTION

Defendant Jack Davis Carter ("Carter") moves to dismiss an indictment filed against him for violation of 18 U.S.C. § 2422(b) on the ground that his conduct does not fall within the scope of the statute. (Doc. 14.) The Government opposed Carter's motion to dismiss the indictment. (Doc. 15.) The issue is whether Defendant violated § 2422(b) by arranging to have sex with a minor through communications with an adult intermediary by a means of interstate commerce using a computer on the internet.

//
//
//

1

## II. **FACTUAL BACKGROUND**[1]

An undercover detective posing as "Lori," a single mother in custody of two young girls, entered into a chat room "preten (sic) parents who share" on the Yahoo! Instant Messenger program.[2] Carter used the moniker "Pervolderman" while the detective, in his undercover capacity of "Lori," used the moniker "centvalmomof1." In the first few minutes of discussion, Carter learned that Lori had a daughter who was eight years old and had custody of her niece who was ten years old. Carter told Lori that he was seeking an "open minded single mom with daughter" and that his dream "has always been to have a little girl as her mom watched." Lori represented that she could provide Carter with access to her niece and daughter for sexual activity.

Through numerous conversations over the course of several weeks, Carter described in graphic detail that he wanted to engage in sexual activity with the two young girls. He offered Lori $500 for the sexual activity with the girls. Because he thought he might be dealing with a law enforcement officer, he stated that he wanted to have sexual intercourse with Lori before he molested the girls.

---

[1] For the purposes of this analysis, it is assumed that the government offered to prove the facts contained in the investigative reports provided by Government's opposition to Defendant's motion to dismiss. (Doc. 15.) Unless otherwise noted, the facts which make up this background section are taken from Government's opposition to the motion.

[2] The terms Internet "chat room" and "instant messenger" refer to a type of Internet service that enables users to engage in real time dialogue "by typing messages to one another that appear almost immediately on the others' computer screens." *Reno v. ACLU,* 521 U.S. 844, 851-852 (1997).

Carter repeatedly discussed his fantasies of molesting the girls and talked about how this would excite him sexually. For instance, he stated that "part of my fantasy is the mother helping me to... rape her little girl." (Doc. 15, Exhibit A. Incident Report of Detective Ken Hedrick, Page 19.) Then he asked, "would you hold her as I raped your little girl?" (Id. at Page 20.) Defendant also stated in a later conversation, "I know I sound like a broken record... but I want to make sure we both understand... fuck them... oh god... have you hold them for me as I rape your little girls." (Id. at Page 27.) He proceeded to state, "I want to see your face as you hear them... as they scream... begging you to stop the bad man from molesting them." (Id. at Page 28.)

Carter also discussed taking digital photographs of the crimes he intended to commit. He asked Lori if she wanted "pics of (him) molesting your little girls" and asked her to imagine "pics of your little girls as they loose (sic) their virginity to a sick old child molester." Id. Then he stated: "I will have to find a video camera... would you film there (sic) raping?" Id. After being reassured that Lori was not a "cop," the defendant told her that "you have no idea how much a turn on it will be seeing you hand your little girls to me to rape and abuse... to hold her as she screams as I tear through her hyman (sic)... taking her virginity." Id. at Page 19.

In addition to internet email and chat communications, Carter also communicated with Lori using the telephone. They arranged for him to travel from his hometown of Houston, Texas to Sacramento, California. Lori agreed to meet him at the

3

1  Sacramento airport and then drive him to Turlock, California,
2  Lori's purported residence.  Upon arrival, Carter intended to
3  molest the eight and ten year old girls and commit various sex
4  acts including -- among other things -- performing and receiving
5  oral sex with both girls and having intercourse with them.  In
6  conversations prior to his anticipated arrival in Sacramento,
7  Carter reiterated that "I think two little girls are going to be
8  raped this weekend" and wondered whether Lori had a quiet
9  apartment or a house.
10     Carter was arrested at the Sacramento airport shortly after
11 he claimed his luggage and began looking for Lori at the agreed
12 upon location.  The officers searched Carter's luggage and
13 located a digital camera.
14     The Stanislaus County District Attorney's Office referred
15 the case for federal prosecution.  A grand jury sitting in the
16 Eastern District of California, Fresno Division, returned an
17 indictment against the defendant on October 28, 2004 charging him
18 with violation of 18 U.S.C. § 2422(b).

### III.  STANDARD OF REVIEW

21     Fed. R. Crim. P. 12(b)(3) allows a defendant to contest
22 jurisdiction in a pretrial motion to dismiss.  *United States v.*
23 *Phillips*, 367 F.3d 846, 855 (9th Cir. 2002)(an indictment may be
24 dismissed for insufficient evidence when the facts are
25 essentially undisputed).  The rule provides that "[a] party may
26 raise by pretrial motion any defense, objection, or request that
27 the court can determine without a trial of the general issue."
28 *United States v. Yakou*, 428 F.3d 241, 247 (D.C. Cir.

2005)(citations omitted). The "general issue" has been defined as "evidence relevant to the question of guilt or innocense. *Id.* A motion to dismiss is generally "capable of determination" before trial "if it involves questions of law rather than fact." *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993)(citations omitted). In the absence of a government objection, several circuits have upheld the district court's pretrial ruling on the dismissal of an indictment under sufficiency-of-the-evidence grounds where the material facts are undisputed and only an issue of law is presented. *Id.* (citing *Phillips*, 367 F.3d at 355). The existence of undisputed facts obviates the need for the district court to make factual determinations properly reserved for a jury. *Yakou*, 428 F.3d at 247 (citing *Phillips*, 367 F.3d at 355). Generally, Rule 12(b) motions are appropriate to consider "such matters as former jeopardy, former conviction, former acquittal, statute of limitations, immunity, [and] lack of jurisdiction." *Nukida*, 8 F.3d at 669.

**IV.  DISCUSSION**

**A. Rule 18 U.S.C. 2422(b)**

*Section 2422(b)* states in relevant part:

> Whoever, using the mail or any facility or means of interstate or foreign commerce... knowingly persuades, induces, entices or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so shall be fined [and imprisoned].

When the statute was first enacted the legislative history shows a purpose "to prevent panderers and procurers from

5

compelling... women and girls against their will and desire" to engage in immoral and illegal sexual activity. *McCray v. United States,* 405 U.S. 944, 946 (1972)(citing S. Rep. No. 886, 61st Cong., 2d Sess., 10 (1910)). Most recently the statute was amended under the PROTECT Act where Congress stated its purpose as seeking "to protect children from those who sexually exploit them, including both child molesters and child pornographers." PROTECT Act of 2003, S.151, 108th Cong. § 2(2)(1st Session 2003). Congress expressed its compelling interest in preventing the sexual exploitation and abuse of children through the use of interstate commerce such as the internet. Id. Congress' stated purpose for the amendments to § 2422(b) under the PROTECT Act was to ensure that criminal prohibitions to such conduct remain enforceable and effective. Id.

**1. An actual minor victim is not required for 18 U.S.C. 2422(b) to apply.**

At the heart of Carter's motion to dismiss is his contention that § 2422(b) does not apply specifically to his conduct. The starting point for interpreting the statute is the language of the statute itself. We look first to the language of the statute, including its object and policy, to ascertain the intent of Congress. *United States v. Meek,* 366 F.3d 705, 718 (9th Cir. 2004)(citations omitted). The purpose of § 2422(b) is to prevent a child predator from "knowingly persuading, inducing, enticing, or coercing" a minor to engage in sexual activity. The 9th Circuit joined several other circuits[3] in concluding that an

---

[3] *United States v. Root*, 296 F.3d 1222, 1227 (11th Cir. 2002) (holding that "belief that a minor was involved is

**6**

actual minor victim is not required for § 2422(b) to apply. *Meek,* 366 F.3d at 717 - 718.

Carter communicated with Lori via the internet and telephone. Through these communications, Carter entered into an agreement to pay $500 in exchange for sexual activity with her purported eight year old daughter and ten year old niece. Carter does not contest that he used these means of interstate commerce to communicate with Lori. Instead, Carter argues that Congress has no authority over a child predator who seeks out child victims using a means of interstate commerce, unless communications are directly with the victim. There is no basis for this argument.

If the statute is read to apply only when an actual minor is involved, "detectives and undercover officers would be unable to police effectively the illegal inducement of minors for sex." *Meek*, 366 F.3d at 719. Taking such a restrictive view of the statute would frustrate its purpose. Police preventive measures such as those conducted here would be abrogated at the cost of either rarely securing a conviction or putting an actual child in harms way. The child molester would gain at the expense of the child, a result sharply at odds with the statute's text and purpose. *Id.*

---

sufficient to sustain an attempt conviction under 18 U.S.C. § 2422(b)"); *United States v. Farner*, 251 F.3d 510, 513 (5th Cir. 2001) (legal impossibility normally not a defense to an attempt to violate § 2422(b)); *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000) (attempt provision of § 2422(b) constitutional because the restriction "does not infringe on any constitutionally protected rights of adults"), cert. denied, 532 U.S. 1009, 149 L. Ed. 2d 661, 121 S. Ct. 1737 (2001).

**7**

**2. Communications by means of interstate commerce with an adult intermediary for the purposes of having sex with a minor falls within the scope of § 2422(b).**

Carter argues that his case is different from a case where a defendant *believes* he is communicating with a minor when in fact he is communicating with an undercover detective patrolling child predators on the internet. Carter argues that at no time did he believe he was communicating with a minor. Carter's communications were with an individual who he believed to be an adult single mother. While admittedly the sexually graphic conversation involved the topic of minor children, Carter argues that his conduct is not punishable under § 2422(b) since he never believed he was communicating with a child. This factual distinction does not provide a principled basis to avoid liability.

The Eleventh Circuit is the only other court to have addressed this issue in *United States v. Murrell*, 368 F.3d 1283 (11th Cir. 2004). *Murrell* is factually identical in all relevant respects to the case before the court. In *Murrell,* the defendant communicated online with a person he believed to be the father of a thirteen year old girl and arranged to have sex with her for $300. The father was in fact an undercover detective investigating child predators on the internet. The Eleventh Circuit upheld defendant's conviction under § 2422(b) on the grounds that "communication by means of interstate commerce with an *adult intermediary* for the purposes of having sex with a minor falls within the scope of the statute." *United States v. Murrell,* 368 F.3d 1283, 1287 (11th Cir. 2004). The court reasoned that by negotiating with the purported father of a

**8**

minor, defendant attempted to stimulate or cause the minor to engage in sexual activity with him. *Id.* This is precisely the type of conduct § 2422(b) seeks to prevent. *Id.*

The claim of attempt is proven by showing 1) defendant had both the specific intent to engage in the criminal conduct for which he is charged and 2) that he took a substantial step toward commission of the offense. *United States v. Root,* 296 F.3d 1222, 1228 (11th Cir. 2002)(upholding conviction under § 2422(b) where defendant communicated only with an undercover government agent). Through his conversations with Lori, the adult custodian for the eight and ten year old girls, Carter attempted to "knowingly induce... or coerce" minors to engage in sexual activity.[4] Carter repeatedly discussed his fantasies of raping the girls and talked about how this would excite him sexually. He stated that "part of my fantasy is the mother helping me to... rape her little girl." Then he asked, "would you hold her as I raped your little girl?"

If a defendant could circumvent the statute merely by communicating with an adult intermediary to carry out his intended plan to sexually abuse minor children the statute would be rendered ineffective. Carter communicated with Lori believing that as the mother and aunt to two minor girls, she exercised sufficient influence over them for defendant's plan to succeed.

---

[4] The word "induce" can be defined in two ways. *United States v. Murrell,* 368 F.3d 1283, 1287 (11th Cir. 2004). First, it can be defined as "to lead or move by influence or persuasion; to prevail upon." The court disfavors this interpretation which is synonymous with the word "persuade". Instead the court adopts the definition of "induce" as meaning "to stimulate the occurrence of; cause." *Id.*

Carter's agreement with Lori, as the agent or representative of the girls, was to engage the minors in sexual activity with him. Though Carter's communications were not directly with the minors, by negotiating with their purported guardian, Carter attempted to stimulate and cause a sexual encounter which would facilitate his sexual abuse of the minors.  Carter's actions fit the statutory definition of "induce", i.e. "to stimulate the occurrence of; cause."  His conduct falls squarely within the prohibition of § 2422(b) which criminalizes persuasion and the attempt to persuade, not the performance of the sexual acts themselves. *Murrell*, 368 F.3d at 1287.  By negotiating with and soliciting the children's mother and custodian for the production of the minors to commit sexual acts, Carter's conduct is within the statutory purpose. *Root,* 296 F.3d 1228; *see also, United States v. Lebovits*, 401 F.3d 1263, 1268 (11th Cir. 2005)(noting in applying sexual abuse guidelines § 2A3.1, it is of no moment that a victim is fictitious because the intent and conduct constitute criminal sexual abuse)(citing *United States v. Rhodes,* 253 F.3d 800, 805 (5th Cir. 2001)).  Even where no actual child is involved, the scope of § 2422(b) extends to communications by means of interstate commerce between a child predator and an adult intermediary for a minor, where such communications are for the purpose of, "knowingly persuading, inducing, enticing, or coercing" the minor to engage in sexual activity.

//
//
//

**B. Congress' Commerce Power extends to regulating online**

**communications between adults involving a scheme to arrange the sexual abuse of children**.

Carter also argues that § 2422(b) as applied to him is unconstitutional because his conduct is not within the authority of Congress to regulate since it is outside the scope of the statute. As a result, Carter argues that the court lacks jurisdiction over his case. Carter's communication was at all times with an adult. At no time did Carter contact a minor or communicate with someone he believed to be a minor. Carter argues that a plain reading of § 2422(b) excludes online communications between adults, even if such communications involve a scheme to "knowingly persuade, induce, entice, or coerce" a minor to engage in sexual activity.

Under the Commerce Clause of the Constitution, Congress has the authority to keep the channels of interstate commerce free from immoral and injurious purposes. *Heart of Atlanta Motel, Inc. v. United States,* 379 U.S. 241, 256 (1964). This authority is broad enough to include the regulation of non economic activities that affect, impede, or utilize the channels of commerce. *Id.; See also, United States v. Cummings,* 281 F.3d 1046, 1048 (9th Cir. 2002). Under its Commerce power, Congress can regulate a statute falling into one of three categories:

> (1) regulating the use of the channels of commerce
> (2) regulating and protecting the instrumentalities of commerce or persons in interstate commerce;
> (3) regulating activities that have a substantial effect on commerce.

*Cummings,* 282 F.3d at 1049.

Carter communicated with Lori via internet and telephone. Through these communications they developed a scheme for Carter

**11**

to pay Lori $500 in exchange for engaging in sexual activity with her ten year old niece and eight year old daughter. Carter does not contest that he used a means of interstate Commerce. Instead, he argues that Congress has no authority over a child molester who seeks out child victims online, when that search only involves communication between the perpetrator and another adult. There is no basis to this argument.

The internet and the telephone are instrumentalities of interstate commerce. Congress clearly has the power to regulate the internet and the telephone as it does other interstate instrumentalities, and to prohibit their use for harmful or immoral purposes. *United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004); *Heart of Atlanta*, 379 U.S. at 256. Under its Commerce Power Congress may reach and prohibit the use of a telephone and the internet to arrange the sexual abuse of children, even if those communications are between two adults, just as it may prohibit the use of those instrumentalities to set up a fraudulent scheme or to arrange a contract murder. *Hornaday*, 392 F.3d at 1311. The statute is not unconstitutional as applied to Carter and his argument contesting the statute's invocation of interstate commerce jurisdiction is misplaced.

**C. Rule of Lenity**

Carter next argues that § 2422(b) is ambiguous and such ambiguity must be resolved in his favor according to the rule of lenity. This argument, however, has been foreclosed by the Ninth Circuit's decision in *Meek*. *Meek*, 366 F.3d at 719. (stating that the elements of criminal liability are manifest from the text of § 2422(b)).

**12**

The rule of lenity is a canon of statutory construction developed by the Supreme Court, rooted in the concern for individual rights and in the belief that fair warning should be accorded as to what conduct is criminal and punishable. *Huddleston v. United States*, 415 U.S. 814, 830 - 831 (1974)(citations omitted). The rule is applied to resolve doubts in the enforcement of criminal statutes in favor of lenity for the defendant. *Dunn v. United States,* 442 U.S. 100, 112 (1979). The rule is also a product of an awareness that legislators and not the courts should define criminal activity. *Huddleston,* 415 U.S. at 830-831. However, although penal laws are to be construed strictly, they "ought not to be construed so strictly as to defeat the obvious intention of the legislature." *Id.*

Section 2422(b) contains no grievous ambiguity or uncertainty in its language or structure. The statute is intended to criminalize conduct when a person "using the mail or any facility or means of interstate or foreign commerce... knowingly persuades, induces, entices or coerces a minor, to engage in any sexual activity." This language is clear and unambiguous. Carter, through his online communication with Lori, acted to induce her purported ten year old niece and eight year old daughter to engage in sexual activity with him. The statute prevents anyone from knowingly acting to engage a minor in sexual activity by use of such means. Anyone reading the law is informed that he or she cannot use the mail or facility or means of interstate or foreign commerce, to in any way, induce or engage a minor in sexual activity. There is no place for application of the rule of lenity to a clear, unambiguous statute

**13**

such as § 2422(b). Carter's argument invoking this rule is rejected.

### D. **18 U.S.C. 2422(b) regulates conduct and does not infringe on otherwise legitimate speech protected by the First Amendment**.

Carter argues that § 2422(b) infringes his protected free speech under the First Amendment. A view of the statute regulating speech rather than conduct is foreclosed by the *Meek* decision. *Meek,* 366 F.3d at 721. The Court of Appeals in *Meek* held that § 2422(b) regulates conduct, the targeted inducement of minors for illegal sexual activity. Speech is "merely a vehicle through which a pedophile ensnares the victim." *United States of America v. Dhingra,* 371 F. 3d 557, 561 (9th Cir. 2004))(quoting *Meek,* 366 F.3d at 721). Speech attempting to arrange the sexual abuse of children is no more constitutionally protected than speech attempting to arrange any other type of crime. *United States v. Hornaday,* 392 F.3d 1306, 1311 (11th Cir. 2004). Defendant's argument that § 2422(b) infringes on speech has been previously rejected. It cannot succeed here.

### V. CONCLUSION

Defendant's motion to dismiss the indictment is DENIED.
**SO ORDERED.**

Dated: April 17, 2006                    /s/ OLIVER W. WANGER

                              **OLIVER W. WANGER**
                              **United States District Judge**

**14**