# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>JACK DAVIS CARTER,<br><br>Defendant | CASE NO. 1:04-CR-5306 AWI<br><br>**ORDER FOR RESPONSE TO MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE**<br><br>(Doc. No. 78) |

On September 16, 2019, Defendant Jack Carter filed a motion for early termination of supervised release. See Doc. No. 78.

*Background*

On October 31, 2006, Carter was sentenced to 60 months imprisonment and 180 months of supervised relieve for violation of 18 U.S.C. § 2422(b), use of a facility of interstate commerce to induce a minor to engage in criminal sexual activity. See Doc. No. 31. The factual basis for Carter's crime involved his travels from Texas to California in the belief that he would be able to engage in sexual acts with two young girls. See Doc. No. 28. Carter's term of supervised release began on December 28, 2009.

In November 2011, Carter used marijuana. See Doc. No. 34.

In January 2012, Carter was charged with violating four terms of conditions of supervised release: (1) having unauthorized contact with a minor, (2) failing to submit written weekly and monthly report, (3) using marijuana, and (4) failing to truthfully answer questions from his probation officer. See id. In April 2012, Carter admitted violations 1, 3, and 4, see Doc. No. 46, and he was sentenced to 6 months in custody and 173 months of supervised release. See Doc. Nos. 52, 53.

1       In November 2012, Carter was charged with four supervised release violations: (1) associating with a prohibited person, (2) associating with a person engaged in criminal activity, (3) failing to follow the instructions of his probation officer, and (4) ingestion of methamphetamine. See Doc. No. 55. Carter admitted all four violations, was sentenced to nine months imprisonment and 165 months of supervised release. See Doc. No. 70.

      In June 16, 2015, Carter used marijuana. See Doc. No. 75.

      In February 2017, Carter was attacked and severely beaten. See Doc. No. 78. Carter suffered intracranial hemorrhages, an orbital fracture, a mandible fracture, vertebral fractures, and had symptoms of traumatic brain injury. See id. Carter also suffers from Parkinson's disease.

      According to a letter from Dr. McClain dated September 12, 2018, she has observed significant and very concerning declines in Carter's health related to his Parkinson's disease, including recurrent falls, difficulty walking, difficulty initiating and changing movements, observable memory loss, and confusion. Dr. McClain also was looking into more supervised/assisted care options as the Parkinson's disease is progressing to the point where he will likely need 24 hour care. Currently, Dr. McClain is of the opinion that Carter should be placed in hospice care and has put in for placement in hospice. It appears that Dr. McClain is a friend of Carter, having met Carter through her husband who is a registered sex offender.

      Despite Dr. McClain's opinions regarding Carter's care, the government reports that Carter is not currently in hospice, he lives independently, and has good and bad days in terms of mental acuity.

*Legal Standard*

      18 U.S.C. § 3583 *inter alia* permits a court to terminate a term of supervised release, after considering various factors in 18 U.S.C. § 3553. See 18 U.S.C. § 3583(e); United States v. Emmett, 749 F.3d 817, 819 (9th Cir. 2014). Those factors are: (1) the nature and circumstances of the offense and the nature and characteristics of the defendant, see § 3553(a)(1); (2) the need for the sentence imposed to provide adequate deterrence, see § 3553(a)(2)(B); (3) the need for the sentence imposed to protect the public from further crimes by the defendant, see § 3553(a)(2)(C); (4) the need for the sentence to provide the defendant with needed educational, vocational,

medical, or other correctional treatment or aide, see § 3553(a)(2)(D); (5) the kind of sentence and the sentencing range established for the applicable category of offense in the sentencing guidelines, see § 3553(a)(4); (6) any pertinent policy statement issued by the Sentencing Commission, see § 3553(a)(5); (7) the need to avoid unwarranted sentence disparities, see § 3553(a)(6); and (8) the need to provide restitution to any victims, see § 3553(a)(7). After considering these factors, a court may terminate supervised release "if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1); Emmett, 749 F.3d at 819. In considering the "interest of justice," the Court may also consider any "undue hardship" that the defendant might be suffering. See Emmett, 749 F.3d at 820. District courts must explain its decision to either grant or deny a motion for early termination of supervised release. See id. at 820-21.

*Defendant's Argument*

Carter argues that he was released from prison 10 years ago and has approximately 93 months of supervision remaining. He is in need of 24 hour care and his physician is of the opinion that he should be placed in hospice care. The stress caused by supervision is worsening his condition. Given his condition, Carter argues that the need for supervision to protect the public or provide rehabilitation is virtually nil, thus warranting early termination.

*Government's Argument*

The United States argues that it considers Carter to be extremely dangerous due to the nature of the offense and his expressed interest in having sexual activity with young children. Further, Carter has not done well on supervised release. He has had multiple violations that have resulted in further terms of imprisonment. This poor performance is enough by itself to deny Carter's request. Without the supervision that had been imposed, Carter would have likely engaged in numerous conduct that would have endangered the public, including minors. Carter's health does not justify early termination. After consulting with Carter's probation officer, the government represents that the probation officer takes into account Carter's health problems. For example, it was decided that Carter did not need to attend group counseling sessions, considering Carter's circumstances. Also, Carter is not in hospice, lives independently, and has good and bad

3

mental acuity days.  The evidence from Dr. McClain is questionable because her opinions may be tainted by her personal friendship with Carter.  Irrespective, United States represents that there is no evidence that Carter is in hospice or is otherwise incapable of caring for himself.  Arguably, if Carter does become disoriented, the public is put in a greater danger if supervision is terminated, given Carter's past conduct and criminal history.  The United States and the probation office oppose early termination at this time.

*Discussion*

The nature of the offense for which Carter was convicted is extremely serious.  Carter traveled hundreds of miles in the belief that he would be able to engage in sexual activity with two minor girls.  The need to deter others from such conduct through sentences involving both imprisonment and supervised release is extremely high.  Additionally, Carter's performance on supervised release on the whole has not been good.  He has violated the terms of his supervised release on several occasions and in about ten different ways.  The result has been additional prison time for Carter and additional endangerment to the community.

The real basis for Carter's motion is his current physical and mental condition.  There is no dispute that Carter suffers from Parkinson's disease and that he has suffered significant brain trauma as a result of an attack in 2017.  No one questions that Carter has "good days and bad days."  Further, the Court does not doubt that Dr. McClain believes that Carter will need 24 hour care eventually and probably should be in hospice care.  This is an opinion that appears to be shared by the probation officer who supervises Carter.  See Doc. No. 83.  However, Carter did not file a reply to the United States' opposition.  In that opposition, it was represented that Carter is not in hospice care and is not living in a 24 hour care situation.  The probation office confirms this is the case.  The probation office also indicates that while Carter is often disoriented, he still has good days in which he acts "peppy" and can grill steaks in a backyard.  Considering his prior behavior while on supervised release, it is possible as the United States suggests that Carter's mental condition could make him more of a threat to the public in the absence of regular supervision.

The Court is not unsympathetic to Carter's physical and mental condition. However, the Court is satisfied that the probation department is aware of and sensitive to Carter's circumstances. The probation department has demonstrated the ability to reasonably work with Carter to address his known physical and mental limitations and problems. The Court has no reason to doubt that such consideration will continue during the remaining term of supervised release.

There may be a time when Carter is placed under 24 hour care or is admitted to a hospice facility. If that time arrives, or if other circumstances change that would justify an early termination under § 3583, then Carter may file a new motion for early termination at that time. Until then, the circumstances of the offense, the need for deterrence, the need to protect the public, and the multiple violations of the terms of supervised release together show that early termination is inappropriate at this time. The Court agrees with the probation department and the United States and will deny Defendant's motion for early termination of supervised release without prejudice.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that Defendant's motion for early termination of supervised release is DENIED without prejudice.

IT IS SO ORDERED.

Dated: October 30, 2019

_____
SENIOR DISTRICT JUDGE